OPINION
Defendant-appellant, James R. Gaston, appeals from the judgment of the Belmont County Court of Common Pleas finding him guilty of one count of rape and one count of attempted rape following a jury trial.
Appellant's convictions arise out of two separate incidents with two different children. The incident in Count 1 involved a nine-year-old girl named Dorothy Morrison (Dorothy). On or about June 15, 1998, appellant and his girlfriend, Maxine Williams (Williams), visited the home of Emma West (West), Dorothy's mother. Appellant and Williams were family friends of West and her children. After visiting for the day, Williams went to work and appellant took Dorothy and two of her brothers, Christopher and J.J., back to his house to spend the night.
After they arrived at appellant's home the children ate pizza and played Nintendo. J.J. became tired and went upstairs to bed. Dorothy fell asleep on the couch. Appellant told Christopher to go upstairs to bed. Christopher tried to get Dorothy to go with him, but appellant told him that Dorothy could sleep on the couch.
Dorothy testified that once Christopher had gone upstairs, appellant went over to her and took her shorts and underwear off. Appellant then removed his own clothing. Dorothy testified that appellant then licked his fingers and stuck them inside her privates. Dorothy testified that appellant told her that if she told anyone what he did that he would have her mother put in prison. By this time Christopher had come back downstairs. He saw appellant naked on the couch with his sister and yelled appellant's name. Appellant jumped up, put his clothes on and threw Dorothy her clothes. The children were crying and told appellant they wanted to go home. Appellant took them home.
The children told their mother what had happened. West took Dorothy to the hospital and then to the police station. Appellant was subsequently arrested and charged with raping Dorothy.
Count 2 involved a seven-year-old girl named Lena Baire (Lena). Lena's mother, Anna Baire (Baire), and Williams are sisters. Lena and her brothers often spent time with Williams and appellant at their home. On one occasion, when Williams was at work, Lena and her brother Buddy were visiting at appellant's home. During a taped interview with Karen Holmes (Holmes), a sexual assault specialist at Belmont County Children Services, Holmes asked Lena if appellant did anything to her that he should not have done and she replied "yeah." Lena said appellant took his part "between his legs" and put it between her legs and that it hurt. She said that it happened once at appellant's house in his bedroom. Lena said that appellant told her not to tell anyone because if she did, he would kill her family.
Lena's mother took her to the hospital and she was given a complete physical exam. The exam revealed that Lena had a tear in the base of her hymen and that her posterior forchette was missing. A pediatric nurse practitioner experienced in sexual abuse assessments testified that these injuries are consistent with penetration and sexual abuse.
As a result of these alleged occurrences, appellant was indicted on two counts of rape in violation of R.C. 2907.02(A)(1)(b). A jury trial was held. On Count 1, the jury found appellant guilty of attempted rape of a child under the age of thirteen. On Count 2, the jury found appellant guilty of rape of a child under the age of thirteen, which was enhanced by the finding that appellant purposely compelled the victim to submit by force or threat of force. The trial court sentenced appellant to eight years in prison for the attempted rape conviction and sentenced appellant to life in prison for the rape conviction to be served consecutively. The trial court also determined appellant to be a "sexual predator" pursuant to R.C. 2950.09(B)(2). Appellant filed his timely notice of appeal on November 23, 1998.
Since appellant is indigent, the court appointed him appellate counsel. Appellant and his counsel were not in contact for some time so appellant took it upon himself to file a pro se supplemental brief before his counsel filed a brief in this case. In his pro se brief appellant raises three assignments of error. Appellant's counsel also raises three assignments of error in his merit brief.
Appellant's first pro se assignment of error states:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, AND IN VIOLATION OF RIGHTS CONFERRED BY ARTICLE 1. SECTION 10 16 OF THE CONSTITUTION OF THE STATE OF OHIO, AND THE FIFTH, SIXTH FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES. WHEN IT DENIED APPELLANT THE EFFECTIVE ASSISTANCE OF COUNSEL ON FIVE (5) DIFFERENT OCCASIONS, IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL. [sic.]"
Appellant argues that his trial counsel was ineffective in five different instances.
To prove an allegation of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must establish that counsel's performance fell below an objective standard of reasonable representation. Strickland v. Washington (1984), 466 U.S. 668, 687; Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. In order to show that he was prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. Bradley,supra, at paragraph three of the syllabus.
Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.
First, appellant alleges that counsel should have called additional witnesses since he mentioned them in his opening statement. Generally counsel's decisions regarding which witnesses to call fall within the realm of trial strategy and will not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49. There is nothing on the record that indicates who these other witnesses are that appellant argues his counsel should have called. Counsel may have anticipated calling other witnesses and strategically changed his mind during trial. Appellant has not demonstrated that he was prejudiced by counsel's failure to call these other witnesses.
Second, appellant claims that counsel should have hired a private investigator for his case. The record does not indicate that counsel acted unprofessionally in handling appellant's case. Appellant has not demonstrated that he was prejudiced in any way because counsel did not hire an investigator.
Third, appellant contends that counsel failed to present an alibi defense. However, no evidence exists on the record as to what the alibi defense was or how it would help appellant. Counsel did file a motion for extension of time to give notice of an alibi defense along with a request that the trial court require appellee to provide a more specific period within which it alleged appellant to have committed Count 2. Counsel also filed a notice of alibi defense, which stated that it may present an alibi depending on appellee's evidence. The trial court determined that appellee could not provide a more definite time frame because it did not know of the exact date on which the incident involving Lena occurred. Presumably, counsel did not provide an alibi defense since the date of the incident with Lena could not be specified.
Fourth, appellant claims that counsel should have used an expert witness in his defense. However, appellant fails to support this allegation with what type of expert counsel should have called or how an expert would have helped his case. Furthermore, counsel may have strategically decided not to call an expert. Appellee sought to call an expert to testify about child sexual abuse syndrome. The trial court did not allow appellee to call such an expert. Had appellant presented an expert, the trial court may have permitted appellee to use its expert to testify about child sexual abuse syndrome, which testimony could have been very damaging to appellant. This court should refrain from second-guessing the strategic decisions of trial counsel. State v.Carter (1995), 72 Ohio St.3d 545, 558.
Finally, appellant alleges that counsel failed to act in a competent manner. Despite whether counsel did or did not err in the way he handled appellant's case, appellant has not met the second Strickland
requirement. Appellant has failed to indicate any conduct by counsel that prejudiced the outcome of his trial. The testimony at trial would remain the same. Dorothy still would have testified that appellant touched her inappropriately. Christopher still would have testified that he saw appellant naked with his sister. Lena's statement would still state that appellant raped her. Also, Lena's medical records would still confirm sexual abuse. Accordingly, appellant's first assignment of error is without merit.
Since appellant's second and third pro se assignments of error both allege prosecutorial misconduct they will be addressed together. Appellant's second pro se assignment of error states:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, AND IN VIOLATION OF APPELLANT'S DUE-PROCESS RIGHT, WHEN IT SUPPRESSED EXCULPATORY EVIDENCE, THAT WAS EVIDENCE IN FAVOR OF APPELLANT'S DEFENSE. [sic.]"
Appellant's third pro se assignment of error states:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, WHEN IT ON SEVEN (7) DIFFERENT OCCASIONS DENIED APPELLANT'S RIGHT TO A FAIR TRIAL, DUE TO PROSECUTORIAL MISCONDUCT, IN VIOLATION OF APPELLANT'S DUE-PROCESS RIGHT OF LAW, AND THE SIXTH FOURTEENTH AMENDMENT RIGHT OF CONFRONTATION, AND UNDER ARTICLE 1. SECTION 16. OF THE CONSTITUTION OF THE STATE OF OHIO. WHEN IT ON TWO (2) DIFFERENT OCCASIONS DENIED APPELLANT THE RIGHT TO CONFRONT NAMED WITNESSES. THE STATE OF OHIO ALSO PROCEEDED TO MAKE GROSS PREJUDICE REMARKS, THEN FAILED TO PRODUCE, SUCH NAMED WITNESSES WHO WAS TO HAVE MADE SUCH REMARKS. [sic.]"
Appellant argues that appellee concealed evidence that was beneficial to him. Specifically, appellant maintains that Lena made exculpatory statements during her voir dire examination which appellee concealed. Appellant also asserts various other instances of what he contends to be prosecutorial misconduct. These alleged instances of misconduct include failing to call Lena's mother as a witness, failing to call a witness who was mentioned in appellee's opening statement, presenting false testimony, mentioning that appellant had been transported to the Bureau of Criminal Identification and Investigation (B.C.I.I.) by the Sheriff's Department, presenting testimony by Sergeant Paul Forro (Forro) regarding events at the jail involving appellant, presenting testimony of an expert on child sexual abuse syndrome, and making false and misleading statements during closing arguments.
The standard of review for prosecutorial misconduct is whether the comments and/or questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. State v. Treesh
(2001), 90 Ohio St.3d 460, 480. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. State v. Lott
(1990), 51 Ohio St.3d 160, 166.
Of the eight proposed instances of prosecutorial misconduct, three of appellant's allegations are simply false. Appellee never concealed evidence from appellant regarding Lena's statements during voir dire. Appellant and his counsel were present for Lena's voir dire. Additionally, appellee never introduced its expert's testimony regarding child sexual abuse syndrome because the court ruled it could not do so. Also, appellee did not present false testimony. Appellant alleges that minor inconsistencies in various witnesses' testimony constitute appellee purposely presenting false testimony. We cannot say that appellee purposely presented false testimony because some of its witnesses had a few inconsistencies in their testimony.
Of the remaining five allegations of prosecutorial misconduct, two cannot be classified as misconduct. It was at appellee's discretion whom it would call as a witness. Appellee was not required to call Lena's mother or anyone else appellant argues it should have called.
As to appellant's remaining allegations, appellant seems to assert that appellee introduced testimony by Forro that was inaccurate. Forro testified that he is in charge of the Belmont County Jail. He testified about events at "the jail" with respect to appellant. Appellant argues that he was not held at the Belmont County Jail. However, appellant's counsel, while cross-examining Forro, asked Forro if he was at the jail when appellant was brought in, to which he replied "yes." Given Forro's testimony that he was at the jail when appellant was brought in, appellant's allegation of false and misleading evidence does not pass muster.
Appellant's allegation that appellee gave false and misleading statements during its closing argument is in reference to one instance when appellee stated that Dorothy was "screaming" that she wanted to go home from appellant's house when the witness had testified that Dorothy "complained" and "yelled" that she wanted to go home. (Tr. 474-75, 517). Considerable latitude is afforded to counsel during closing argument.State v. Mauer (1984), 15 Ohio St.3d 239, 269. Appellee's minor mischaracterization of the testimony cannot be said to have prejudiced the outcome of appellant's trial.
Appellant's remaining allegation of prosecutorial misconduct concerns appellee's examination of Officer Gerald Yates (Yates). Yates testified that he transported appellant to B.C.I.I. Yates further testified that appellant commented to him that he was going to lose his house but that he deserved it for being in this situation. On cross-examination, appellant's counsel raised a question about what situation appellant could have been referring to. Therefore, on re-direct, appellee asked Yates if he transported appellant to B.C.I.I. because of the present case, to which he answered "yes." Appellant promptly objected to the controversial question and the court prohibited appellee from examining Yates further to avoid any prejudice to appellant. Based on the entire record, it cannot be said that appellee's one improper question deprived appellant of a fair trial.
Accordingly, appellant's second and third assignments of error are without merit.
As stated previously, appellant's counsel asserts three assignments of error, which will be referred to as appellant's fourth, fifth, and sixth assignments of error respectively. Appellant's fourth assignment of error states:
 "THE TRIAL COURT'S ADMISSION INTO EVIDENCE OF A CHILD DECLARANT'S AUDIO-TAPED STATEMENT DENIED APPELLANT DUE PROCESS OF LAW AND THE RIGHT TO CONFRONT HIS ACCUSERS, IN VIOLATION OF ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."
The court ruled that Lena was competent to testify; however, it ruled that she was unavailable as a witness since she refused to talk about her encounter with appellant. Because she was unavailable, the court allowed appellee to play a tape-recorded interview of Lena by Holmes pursuant to Evid.R. 807.
Appellant argues that the trial court erred in allowing Lena's statement into evidence. He contends that Lena was not competent to testify. Appellant argues that Lena had little ability to recollect accurate impressions of fact, or, in the alternative, she falsely claimed that she could not remember. Appellant points out specific instances in the court's questioning of Lena to support his contention. He notes that she stated that she did not know why she was at the courthouse, that she did not know the difference between right and wrong, and that she did not remember why she had gone to the police station. Appellant also notes that Lena stated to the court that she could not promise that she did not lie.
Appellant also asserts that by admitting Lena's interview into evidence, the court denied him of his Sixth Amendment right to confront witnesses against him. He claims that Lena's statement was hearsay not within any recognized exception.
A review of the transcript reveals that although appellant did object to the admission of the taped statement, he did not object to the finding that Lena was competent. Failure to object at trial constitutes a waiver on appeal of all but plain error. State v. Lindsey (2000),87 Ohio St.3d 479, 482. "To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice." State v. Bock (1984), 16 Ohio App.3d 146, 150. Notice of plain error is to be taken with great caution under exceptional circumstances, and then only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
When considering whether a child witness, under the age of ten, is competent to testify the court must consider:
 "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." State v. Frazier (1991), 61 Ohio St.3d 247, 251.
Prior to trial, the court conducted an interview of Lena to determine if she was competent to testify. During the interview the court asked her various questions about lying and telling the truth. Lena demonstrated that she knew the difference between the truth and a lie. Lena was wearing a blue dress. The court asked her if it said that her dress was red, what would that be. Lena stated that would be a lie. The court asked Lena if she believed in God, to which she responded yes. The court asked her if she believed that God wanted people to tell the truth, to which she also answered yes. When the court asked her what would happen if she lied, she stated that God would not like her and she might get a butt whipping. Lena also told the court that she would tell the truth.
When the court began to question Lena about appellant she responded to most of the court's questions with "I don't remember" and said she would not answer any more questions. The court asked Lena if she trusted Holmes and she said yes. The court asked Holmes if she would question Lena. Holmes coaxed Lena to answer a few questions about their previous interview at the police station. Holmes asked Lena if she would talk about anyone that hurt her and Lena responded no. Holmes and the court both asked Lena repeatedly if she would answer more questions and she told them no.
The trial court, both on its own and with Holmes' help, conducted a thorough interview of Lena. The court found that Lena demonstrated that she understood the meaning of truthfulness and the difference between the truth and a lie. She showed that she understood that there is a punishment for lying. The court also found that Lena was able to receive just impressions of relevant facts and relate those impressions. Based on the foregoing, it cannot be said that the trial court committed plain error in finding Lena competent to testify.
As to whether the court properly admitted Lena's taped interview into evidence, we must look to the rules of evidence. Evid.R. 807(A) provides that an out-of-court statement made by a child under twelve years of age describing a sexual act performed with the child is not excluded as hearsay as long as certain prerequisites are met. In order to admit such a statement all of the following must apply:
 "(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid. R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.
 "(2) The child's testimony is not reasonably obtainable by the proponent of the statement.
 "(3) There is independent proof of the sexual act or act of physical violence.
 "(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness." Evid. R. 807(A).
One of the ways to establish that the child's testimony is not reasonably obtainable in accordance with Evid.R. 807(A)(2) is if the child refuses to testify about the subject matter of the statement or claims a lack of memory about the subject matter of the statement after a person trusted by the child, in the presence of the court, urges the child to describe the acts in the statement and to testify. Evid.R. 807(B)(1).
The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 180. This court will not reverse a trial court's decision on the admission or exclusion of evidence absent an abuse of discretion. Id.
In this case, Lena's taped interview met the mandates of Evid.R. 807. Lena is age seven. The court found that the totality of the circumstances surrounding the making of the statement to Holmes provided particular guarantees of trustworthiness. The court indicated that the interview appeared to be conducted according to protocol and Lena's answers seemed spontaneous. The court found that Lena's statement was consistent throughout and she lacked a motive to fabricate. It also noted that Lena's account of the events was adequate considering her age.
Next, the court found that Lena's testimony was not reasonably obtainable by appellee because she refused to answer questions by the court concerning the series of events involving appellant. Even after Holmes urged Lena to testify, she refused to answer the questions posed to her. The court also pointed out that Lena stated that she trusted Holmes.
The court found that independent proof of a sexual act existed. State's exhibit six consisted of Lena's medical records that indicated that she had a tear in her hymen to the floor of her vagina and the absence of a posterior forchette, which are consistent with penetration.
Finally, the court found that appellee fulfilled the ten-day notice requirement by providing appellant, in writing, with the content of Lena's statement, the time and place at which it intended to use the statement, the identity of the witness who was to testify about the statement, and the circumstances surrounding the statement that indicated its trustworthiness.
The court went to great lengths to ensure that Lena's statement strictly complied with Evid.R. 807 before allowing appellee to play it for the jury. It analyzed all of the requirements set out in Evid.R. 807, made sure that Lena's statement conformed to each one, and stated its reasoning on the record. The trial court did not abuse its discretion in admitting Lena's statement. Accordingly, appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error states:
 "THE TRIAL COURT'S EXCLUSION OF RELEVANT EVIDENCE VIOLATED EVID.R. 404(B) AND DENIED APPELLANT HIS RIGHT TO PRESENT A DEFENSE."
At trial, appellant sought to introduce evidence of West's history of living with sexual offenders and of past allegations of abuse. West is Dorothy's mother. The court ruled that such evidence was irrelevant because it referred to the character of the witness and had nothing to do with her character for truth or veracity.
Appellant argues that the trial court should have permitted him to introduce the evidence of West's history of living with sexual offenders and of past allegations of sexual abuse. He claims that such evidence was admissible under Evid.R. 404(B) and 405(B). He explains that he wanted to introduce the evidence to show that West was willing to promote allegations of abuse and to show that someone else may have caused the abuse. Appellant asserts that this evidence was essential to his defense.
As stated previously, the admission or exclusion of evidence rests in the sound discretion of the trial court. Sage, 31 Ohio St.3d at 180. This court will not reverse a trial court's decision on the admission or exclusion of evidence absent an abuse of discretion. Id.
"Relevant evidence" is evidence that tends to make the existence of a fact at issue more probable or less probable than it would be without the evidence. Evid.R. 401. Generally, all relevant evidence is admissible while evidence that is not relevant is not admissible. Evid.R. 402.
Particular facts that tend to discredit the reputation of a person who is sought to be impeached in other respects than as to his reputation for truth and veracity are inadmissible. State v. Tolliver (1984),16 Ohio App.3d 120, at paragraph one of the syllabus.
Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Evid.R. 405(B) states that specific instances of conduct may be admitted when the witness's character or a trait of character is an essential element of a charge, claim, or defense.
While cross-examining West, appellant sought to introduce evidence of her history of living with sexual offenders and felons and evidence of other sexual assault charges involving her family. Appellant now claims he wanted to introduce such evidence to prove that someone else may have abused Dorothy and to show that West instigated allegations of abuse. However, at trial appellant did not seek to introduce the evidence for those purposes. Appellant stated at trial that he wished to cross-examine West on these issues because they went to her credibility. This evidence pertains to West's moral character. It does not tend to prove or disprove a fact at issue in the case nor does it help to prove West's character for truth or veracity. Whom West lived with in the past and whether her family members have been involved in sexual assault charges have no bearing on whether appellant attempted to rape Dorothy nor does it help show that West was or was not testifying truthfully.
The cross-examination concerning West's past was irrelevant and thus inadmissible. The trial court cannot be said to have abused its discretion in ruling such evidence inadmissible. Therefore, appellant's fifth assignment of error is without merit.
Appellant's sixth assignment of error states:
 "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE LESSER INCLUDED OFFENSE OF ATTEMPTED RAPE."
Appellant argues that the court should not have instructed the jury on the lesser-included offense of attempted rape. He contends that appellee did not present any evidence on the offense of attempted rape. Appellant asserts that Dorothy testified that his finger penetrated her while he testified that the incident never occurred. He maintains that no middle ground exists.
An instruction on a lesser-included offense is only required when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. Statev. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. The fact that an offense may be a lesser-included offense of the crime charged does not compel the court to instruct the jury on both offenses.State v. Wilkins (1980), 64 Ohio St.2d 382, 387. "If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given."Id. at 388.
Attempted rape is a lesser-included offense of rape. State v. Williams
(1996), 74 Ohio St.3d 569, 578.
R.C. 2907.02(A) states in pertinent part:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
"* * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
R.C. 2923.02(A) states:
 "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
Given the evidence presented at trial, it was reasonable for the jury to find appellant not guilty of rape but guilty of the attempted rape of Dorothy. Dorothy testified that appellant inserted his finger inside her privates. However, on cross-examination Dorothy stated that she did not tell the children's services worker that appellant penetrated her, only that he touched her. Also, Nancy Stauffer, an emergency room nurse who examined Dorothy, testified that Dorothy said that appellant touched her on her privates but did not mention that appellant penetrated her with his finger. This evidence, coupled with the evidence that Christopher saw appellant naked with Dorothy and yelled appellant's name which caused appellant to jump off of Dorothy, supports the jury's finding appellant guilty of attempted rape and not guilty of rape. It was reasonable for the jury to adduce that when Christopher saw appellant with Dorothy, appellant had touched her but had not yet penetrated her. Additionally, it was reasonable for the jury to conclude that appellant would have penetrated Dorothy had Christopher not caught him.
Therefore, appellant's sixth assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.